**Exhibit A**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REUTERS NEWS & MEDIA, INC, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendant. | Case No. 22-0587 (ZMF) |

## DECLARATION OF MERRICK WAYNE

I, Merrick Wayne, make the following declaration:

1. I am over the age of 18 and competent to provide this declaration.

2. The following statements are made on my personal and professional knowledge and, if sworn as a witness, I can testify competently thereto.

3. I represent plaintiff Reuters News & Media, Inc. ("Reuters") in this action.

4. On January 22, 2024, my office filed Plaintiff's Reply in Support of Its Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. I received an ECF notice of the filing at approximately 2:13 PM CDT.

5. On January 22, 2024, at approximately 2:43 PM CDT, Bradley Silverman, counsel for Defendant, emailed my co-counsel, Stephen Sitch Match, and me threatening to seek sanctions against Reuters, our law firm, and both of us personally, accusing us of misrepresenting the facts about Defendant's search in our brief.

6. A true and correct copy of Mr. Silverman's January 22, 2024 email threatening sanctions is attached as Exhibit 1.

7. On April 26, 2024, I had a phone call with Mr. Match and Mr. Silverman. During the call, Mr. Silverman revealed that Defendant had not conducted the search in the manner Defendant had previously told us and represented to the Court, notwithstanding his threat of a sanctions motion. Mr. Silverman apologized for accusing us of making a misrepresentation and for threatening sanctions.

8. After Defendant conducted the actual search, I conferred with counsel for Defendant about the search results. Part of the conferral process included me asking Defendant to conduct a full deduplication across all of the potentially responsive records and to provide a breakdown of hits by custodian and search term. Defendant has not provided us with the results of a full deduplication nor has it provided a breakdown of hits by search term and custodian for the fully deduplicated universe.

9. I also asked Defendant to provide us with a summary search report from its Office of the Chief Information Officer for a sample of custodian Gary Disbrow's responsive emails.

10. On January 31, 2025, Defendant provided a summary search report for the sample in the form of an Excel spreadsheet ("January Spreadsheet"). The January Spreadsheet consists of 18,035 rows, including the header row. The remaining rows are metadata for the emails in the sample. There are 127 columns, including header fields for "File_ID", "Custodian", "Date", "Message_kind", "Email_to", "Email_CC", "Email_BCC", "Email_subject", and "Email_has_attachment". Many columns are blank in every row such as "Parent_node", "Dominant_theme", and "Tags".

11. On February 28, 2025, I emailed counsel for Defendant requesting that Defendant provide a summary for the remaining custodians, so that Plaintiff can try to deduplicate across custodians.

- 3 -

12. A true and correct copy of my February 28, 2025 email to counsel for Defendant is attached as Exhibit 2.

13. On June 25, 2025, Defendant sent me another Excel spreadsheet ("June Spreadsheet"), but this spreadsheet looks nothing like the January Spreadsheet. The June Spreadsheet contains 47 rows (including 2 blank rows) and 3 columns. The first seven rows pertain to the "Export Name", "Export ID", "Case Name", "Case Id", "Export Started by", Export Started date (UTC), and Export Format. Then six rows indicate the "Export Info": "Total", "Actual", "Errors", and "Skipped Processing" by "Count" and "Size(bytes)". The remaining rows identify 31 "Export containers" by "Count of files" and "Size(bytes)". But the June Spreadsheet does not identify the contents of the export containers.

14. I am generally familiar, as a result of frequent conferrals with government counsel in FOIA cases, with the order of magnitude of emails that agency officials create and receive. Defendant's claims as to the volumes of records hitting on the agreed-upon search terms is implausibly high, and likely the result of flaws in the search mechanics.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2025.

*Merrick Wayne*
Merrick Wayne



Merrick Wayne <merrick@loevy.com>

## Three Reuters Questions

**Silverman, Bradley (USADC)** <Bradley.Silverman@usdoj.gov>   Mon, Jan 22, 2024 at 2:42 PM
To: Merrick Wayne <merrick@loevy.com>, "match@loevy.com" <match@loevy.com>

Hi Merrick and Stephen, three questions:

1. HHS is going to move for leave to file a response to Reuters' statement of facts. What is Reuters' position on the relief requested. If Reuters opposes, does it assert a basis for that opposition, and if so, can Reuters tell us what it is? HHS plans to file the motion by 5 PM tomorrow, so I would be grateful for a response by then.

2. For the reasons explained in HHS's motion, HHS believes that Reuters is going back on its representation to the Court, and thus is acting in bad faith, which would support a motion for attorney's fees by HHS. As of this moment, I am tracking my time spent working on this case, and my reviewers will as well. Should HHS prevail, it may move for sanctions/attorneys fees against Reuters. HHS will not move for such sanctions/fees if Reuters agrees to dismiss the case and seek any relevant relief through a separate FOIA request. Will Reuters agree to do so?

3. This summer, I called you to explain that HHS's representation that there were no records period was inaccurate, based on an inadvertent intragovernmental miscommunication, and that in fact, there were no *responsive* records, not no records at all. I informed you of this as soon as the error came to my attention, and you thanked me for doing so promptly. In your motion, you nonetheless chose to claim that HHS had said that there were no records period, as if I had not promptly corrected the record upon realizing the mistake. Perhaps that was Stephen's doing, since he was not on the call, although I would have expected you to read the filing and correct the error before submitting it. In HHS's view, Reuters' representation is false and dishonest, and would support sanctions. Should HHS prevail, it may seek sanctions against Reuters, your law firm, and/or you, based on this dishonest misrepresentation, unless Reuters agrees to withdraw it. Will Reuters agree to withdraw it?

Feel free to reach out to me by phone if you would like to discuss. My number is (202) 815-8708.

Best,

**Bradley G. Silverman**

Assistant U.S. Attorney

Civil Division | U.S. Attorney's Office

601 D Street NW, Washington, DC 20530

(202) 252-2575

**LOEVY + LOEVY**

Merrick Wayne <merrick@loevy.com>

## Reuters v. HHS 22-0587 JSR Draft

**Merrick Wayne** <merrick@loevy.com>                                                             Fri, Feb 28, 2025 at 2:04 PM
To: "Silverman, Bradley (USADC)" <Bradley.Silverman@usdoj.gov>
Cc: Stephen Stich Match <match@loevy.com>, FOIA Team <FOIA@loevy.com>

Hi Bradley,

Plaintiff would like HHS to provide a CSV summary page for the remaining custodians. Since HHS is unable to deduplicate across custodians, we think we might be able to do that for HHS if we have each of the custodians' CSV summary pages.
Attached is a version of the JSR with my edits in track changes to reflect the above. If this is acceptable to you, then you have my consent to file.

[Quoted text hidden]

📄 **Reuters v. HHS 22-0587 JSR 20250228_MW edits.docx**
28K