# Ex. A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REUTERS NEWS & MEDIA, INC.,

     Plaintiff,

     v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES.

     Defendant.

Civil Action No. 22-0587

**Declaration of Alesia Y. Williams**

I, Alesia Y. Williams, declare the following to be true and correct:

   (1)  I am the Director of Freedom of Information Act (FOIA) Appeals and Litigation, in the

Office of the Assistant Secretary of Public Affairs in the Department of Health and Human

Services (HHS).  In this capacity, I am responsible for supervising the handling of FOIA appeals

and litigations received by the HHS Office of Secretary (OS). The HHS OS FOIA Office

processes FOIA requests for records maintained by OS Staff Divisions other than HHS's Office

of Inspector General. [1]  I have held this position since March 2021.  From December 2013 to

August 2018, I was the Chief of the Defense Intelligence Agency's (DIA) FOIA and

Declassification Office.  In that capacity, I had responsibility for managing the Agency's FOIA

---

[1] *See*, https://www.hhs.gov/about/agencies/orgchart/index.html (HHS Organizational Chart).

and Privacy Act Programs to include the processing of appeals and litigation, Mandatory

Declassification Review and 25-Year Review Programs. I performed duties as the Agency

declarant for all FOIA litigations. From August 2008 to December 2013, I was the Chief of DIA

FOIA Staff overseeing the processing of requests, appeals and litigations. I performed duties as

the Agency declarant for all FOIA litigations.

   (2)  In my official capacity as Director, FOIA Appeals and Litigations, I supervise

approximately nine employees as the Litigation Team is comprised of seven contractors and

handles the litigation processing for the FOI/PA Division. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions I reached based on that knowledge or information.

   (3)  As part of my official duties, I have knowledge of the procedures followed by the Office

of the Secretary in responding to requests for information from its files pursuant to provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.   Specifically, I am

aware of the treatment which has been afforded Plaintiff's FOIA request.

   (4)  The purpose of this declaration is to explain the HHS FOIA Office's search for

responsive documents in the above-referenced case.

## PLAINTIFF'S FOIA REQUEST

   (5)  On August 9, 2023, the HHS FOIA Office received a FOIA request from Plaintiff.  The

FOIA request sought the following categories of agency records:

1. Analysis, documents or reports related to the performance of contractors or
   subcontractors awarded contracts by HHS, including APSR and BARDA related to
   all healthcare, medicines, vaccines, therapies, syringes, respirators and other medical
   needs for the response to the COVID-19 pandemic from January 1, 2020 to present,
   including the attached contracts.
2. FDA communications related to the contractor's performance before award or after
   award. (Date Range for Record Search: From 1/1/2020 To 8/5/2021)".

(6)   The next day, Plaintiff sent the FOIA office the following email:

My request is for the assessments of the actual performance of the contractors or subcontractors who received pandemic contracts from HHS/APSR/BARDA from January 1, 2020 to the present. My request is not for the actual contracts. I am only interested in how the contractors have performed on these contracts and any documents that detail any performance assessments by HHS/ASPR/BARDA or any other agency or contractor that would be involved in such an assessment on behalf of HHS.

(7)   On August 13, Plaintiff sent the FOIA office another email saying as relevant: "I am

interested in the performance analysis…"

(8)   On March 3, 2022, Plaintiff filed the above caption action.

**The Initial Search**

(9)   On August 9, 2021, OS-FOIA sent the FOIA request to the Office of the Assistant Secretary for Preparedness and Response (ASPR), Biomedical Advance Research and Development Authority (BARDA) for records responsive to the request.

(10) In cooperation with ASPR/BARDA, OS-FOIA coordinated a search to locate records within the scope of the request.  Accordingly, APSR/BARDA queried the Contractor Performance Assessment Reporting System (CPARS) -- the system of record for conducting, tracking, and reporting contract performance assessments which are done at the completion of a contract.

(11) A further search was conducted in consultation with BARDA's Division of Contract Management and Acquisition to the program offices who maintain the Contracting Officer Representative (COR) files for contracts.

(12) On October 8, 2021, OS-FOIA received information from ASPR/BARDA that "no responsive records" were located.  On October 12, 2021, OS-FOIA issued a determination letter stating that "no responsive records" were located.

(13) On October 20, 2021, Plaintiff files an administrative appeal, challenging the final decision.  On November 8, 2021, OS FOIA acknowledged the appeal.

(14) On March 3, Plaintiff filed this lawsuit.

(15) After this lawsuit was brought, OS-FOIA again reached out to ASPR/BARDA to conduct

a second search for confirmation that the previous search returned no records.  Also, OS FOIA

reached out to the Food and Drug Administration (FDA) to conduct a search.  ASPR/BARDA

and FDA searched their respective CPARS and COR contractual files and confirmed that no responsive records were found.

**The Second Search**

(16) On December 22, 2022, Plaintiff proposed a new search.

(17) On December 26, 2002, the parties reported that "Reuters has presented the Department with a proposal for the methodology of an adequate search, including proposed custodians and search terms, which the Department is currently reviewing."

**Third Search**

(18) On March 1, 2023, OS FOIA tasked the Office of Chief Information Officer (OCIO) to perform a search of the email enterprise in accordance with Reuters' proposed methodology, including proposed custodians and search terms. We found no responsive records.

**Fourth Search**

(19) On March 15, 2024, OS FOIA tasked OCIO to redo the search when it was discovered that the third search was not the exact search Plaintiff asked for. The search yielded approximately 778.64 GB of potentially responsive material.

**HHS OF FOIA Office FOIA Litigation Review Process**

(20) Requests that are in litigation are handled by the Litigation Team. When a FOIA complaint is filed in district court, the administrative record, searches, and any processed material, is provided to the Litigation Team. The Litigation Team handles all processing, consultations, referrals, and production of material subsequent to the filing of a complaint. Once a record set is reviewed by the Litigation Team, it is then sent to the Office of General Counsel for legal sufficiency review.

(21)  The Litigation Team is responsible for the FOIA review process when a request is in litigation. This includes coordinating the searches if searches have not been performed. The search process involves tasking offices with a search of their own records and/or requesting the Office of the Chief Information Officer to perform a search for electronic records.

(22)  Each potentially responsive record must be uploaded to the review software, then reviewed line by line to determine whether the document is responsive to the request, whether information should be withheld under one or more of the nine exceptions to the FOIA, and whether the records implicate the equities of other federal agencies.

(23)  In this case, anything over 10GB, OS FOIA must upload records to the vendor's website so that it can be imported in the FOIA system before the processing of indexing and threading can occur.  Only one file (up to 10 GB) can be uploaded to the vendor's site at one time.  This process is very time-consuming, at times, OS FOIA experience timing out of the system due to size of files.

(24)  During the review process, the Litigation Team may have to consult with HHS employees in the program offices to inform OS FOIA's decision to apply exemptions or not.

(25)  If the document contains other federal agency equities or wholly originated with another federal agency, the Litigation Team will either initiate a consultation or referral, as appropriate.

(26)  After completing this review process, the records are then sent to the Office of the General Counsel for legal sufficiency review.

(27)  When the records are finalized, the Litigation Team prepares a response letter detailing the number of pages processed, the number of pages withheld in part, the number of pages withheld in full, the number of pages sent for referral or consultation, and the reasons for the withholdings.

**Increase in HHS OS FOIA Office Obligations**

(28)    At the end of FY 2024, the HHS OS FOIA Office had received 2,819 incoming FOIA request.  At the end of FY 2023, the HHS OS FOIA Office had received 1,432.  HHS FOIA Office has officially received double the amount of FOIA requests in FY 2024 as it did in FY 2023. Since 2017, the HHS OS FOIA Office has seen a rising trend of incoming FOIA request.  In FY 2017 1,633 FOIA requests were submitted, and in FY 2018 1,926 FOIA request were received. In FY 2019 we had 1,733 requests submitted and in FY 2020 the number jumped to 2,032 requests. FY 2021 had 1,993 requests, in FY 2022 there were 1,592 submitted, in FY 2023 there were 1,432 submitted, and finally, in FY 2024, there were 2,819 requests submitted.

(29)  HHS OS FOIA current backlog of initial requests is 3,679.

(30) The current backlog of administrative appeals is 563.

(31) The current workload of litigations is 82.

(32) HHS OS FOIA Office currently has 24 personnel responsible for managing the FOIA requests, appeals, and litigation.  The Assistant Secretary for Public Affairs experienced a flat line budget for FY2024 which did not allow for an increase of personnel to support the FOIA Operations.  Also, HHS OS FOIA did not receive an additional funding at the SWEEP end-of-year request for funding.  OS FOIA was forced to reduce personnel this year by seven FOIA analysts and currently has vacancies of four full time employes.

(33)  Concomitantly, the complexity of incoming requests increased with each year as did the volume of data and material potentially responsive to the requests.

(34)  Coupled with the rapid year-over-year rise in incoming FOIA requests, and the increasing complexity of the requests, the HHS OS FOIA Office experienced an unprecedented

6

level of FOIA litigation. Due to this increased FOIA litigation beginning in FY 2018, the duties of HHS OS FOIA staff who customarily focused on processing FOIA requests, consultations, and appeals, shifted from responding to FOIA requests in the normal course to almost exclusively processing FOIA requests in litigation. This diversion of staff resources to respond to ever increasing litigation caused a sharp increase in pending FOIA requests. This remarkable volume of FOIA litigation continued through FY 2024 totaling 82 open litigations. The need to shift resources to litigation to meet court deadlines meant that fewer initial cases were processed, which caused even more litigation.

(35) For instance, as of October 2024, the HHS OS FOIA Office is currently involved in eighty-two (82) active FOIA litigation matters. These eighty-two litigation matters include 132individual FOIA requests. Pursuant to orders or agreements in these FOIA litigation matters, the HHS OS FOIA Office processes 15,000 to 20,000 pages per month. These numbers do not include the processing of consultation pages the HHS OS FOIA Office receives from other federal agencies in litigation or processing FOIA requests not in litigation.

(36) In most of the cases, the HHS FOIA Office is processing at the rate, on average, of 400-500 pages per month. With the increased demands on the FOIA Office's resources, the HHS FOIA Office can not offer higher rates of processing.

(37) Further, a typical Litigation Team processor is assigned to seven to eight litigations at approximately 500 pages per month. So each processor is producing 3,000 to 4,000per month as is.

(38) Given the increased volume of recent FOIA litigations across the federal government, and within all HHS Operating Divisions (including FDA, CDC, and NIH, which each have their own FOIA Offices), the volume of FOIA litigation consultations our office receives has

increased dramatically. In FY 2024, we received approximately 84 litigation consultation requests. As of October 1, 2024, OS FOIA had approximately 20 litigation consultation requests.

(39) Recognizing the building backlog of FOIA requests and the overwhelming requirements associated with processing and producing material in FOIA litigation, the HHS OS FOIA Office analyzed and considered procedures and processes to address the increasing workload. To respond to the burgeoning litigation needs of the HHS OS FOIA Office, the HHS OS FOIA Office created a Litigation Team at the beginning of FY 2020. As part of this restructuring of the HHS OS FOIA Office, four contractors were hired to the Litigation Team and two other contractors were re-assigned from other FOIA duties. This team is currently comprised of a team lead and four FOIA analysts and two vacancies.

(40) In addition to its responsibilities for responding to incoming FOIA requests and FOIA litigation for the OS Staff Divisions other than HHS's Office of Inspector General, the HHS OS FOIA Office also is responsible for adjudicating administrative appeals from nine of the largest Operating Divisions in HHS.

(41) The number of incoming appeals has steadily increased since FY 2017, which coincided with the increasing FOIA requests and litigation burdens on the HHS OS FOIA Office. In FY 2017, OS FOIA Office received 154 appeals; in FY 2018, 158; in FY 2019, 173; in FY 2020, 355; in FY 2021, 281; in FY 2022, 288; in FY 2022, 288; in FY 2023, 287; and FY 2024, 295. Currently, the HHS OS FOIA Office has 563 appeals to process. Throughout this period, the HHS OS FOIA Office's ability to devote staff to adjudication of appeals significantly decreased due to competing demands of processing FOIA requests in litigation and the influx of incoming FOIA requests outside of litigation. The HHS OS FOIA Office has taken steps to reduce the

backlog of appeals before it, including that the FOIA office for the Food and Drug
Administration plans to begin handling its own appeals in FY 2021.

(42) In FY 2024, OS FOIA experienced an overwhelming volume of new FOIA requests
resulting in the current backlog of 3785 compared to FY 2023 backlog at 2210.

### Processing Plaintiff's Request

(43)  As previously stated, the search conducted on Plaintiff's insistence returned
approximately 778.65 GB of potentially responsive records.  The set of responsive materials is so
large that HHS OS FOIA cannot even upload it into its FOIA processing software system.  HHS
OS FOIA was able to upload a 10 GB subset of material from a single custodian (who alone has
~70 GB of potentially responsive materials) to perform preliminary analysis. That analysis
revealed that these 10 GB translate to 38,194 pages prior to deduplication, which reduced the
page count to 20,181. Extrapolating from this, Defendant estimates that the full set of potentially
responsive material amounts to about 1,571,373 pages.

(44)  Defendant further estimates that reviewing each page would take it between six to fifteen
minutes—five to ten minutes for the FOIA office to review, and then one to five minutes for the
Office of the General Counsel to review. Using the most conservative estimate—i.e., six minutes
per page—Defendant estimates that reviewing the full set of potentially responsive material
would take about 17.92577 years, assuming that a single person continuously processed pages
without ever taking breaks to eat, sleep, or do anything else. Again, this all is using the most
conservative estimate of six minutes per page. Assuming that processing each page actually takes
ten and a half minutes, the exact midpoint between six and fifteen minutes, processing the full set
of potentially responsive records would take a single person about 31.37 years, assuming
continuous work with no break for anything else. Either way, were the Court to order a

processing rate of 500 pages per month, processing the potentially responsive materials would take about 261.89556 years.

(45) This estimation does not take into account timing if any of the pages needed to be sent for consultation, which could only add time to the entire process.

(46)  This amount of data return is unprecedent for the HHS OS FOIA Office. Even if the office was able to have the resources to process each page, we are unable to upload all of the material to work on.

(47)  Given the enormous volume of the returned records and the considerable amount of time it would take for the HHS OS FOIA Office to review and appropriately redact to process these pages would create an extraordinary and undue burden on HHS. By its nature, FOIA processing requires human beings to manually analyze records to determine whether information is, based on content and context, not only responsive to the FOIA request, but also exempt or non-exempt from disclosure.

(48) Further, HHS OS FOIA is unconvinced that processing the records will result in many pages that will be responsive to Plaintiff's FOIA request.  The request terms are too general and broad. It is set up into 3 qualifiers, with the first being companies, the second being anything that brings in the word "COVID" among other terms, and the third having terms like "problem, concern, contract, FDA, difficult, etc."  The terms in the second and third qualifiers are so broad and used so commonly, any document that contains the word covid (which is a lot of documents) is probably going to contain a word from the third set of terms as well.  Therefore, it is HHS OS FOIA's belief that many of the returned documents will not be responsive to Plaintiff's request.

(49) For the foregoing reasons, it would be unduly burdensome for HHS FOIA to process approximately 778.65 GB worth of documents (estimated 1, 571,373 pages).

I declare under penalty of perjury that the foregoing to true and correct, to the best of my information and belief.  28 U.S.C. § 1746.  Executed this 4th day of November 2024.

_____

Alesia Y. Williams
Director, FOIA Appeals and Litigation
FOIA/Privacy Acts Division

# Ex. B

| | |
|---|---|
| **From:** | Silverman, Bradley (USADC) |
| **To:** | Merrick Wayne |
| **Cc:** | FOIA Team |
| **Subject:** | RE: [EXTERNAL] Re: Reuters Research |
| **Date:** | Thursday, December 5, 2024 3:33:00 PM |

Yes! Sorry. I thought I already had sent this to you.

1. What is the exact error message that displays when HHS tries to upload the file to FOIAXpress? We do not get an error message in FX.  It will just stall out and not be able to load.
2. When uploading to FOIAXpress, does HHS upload the file from the local disk or from the EDR File Server? We do it both ways, depending on the size of the file.  Anything less than 10GB typically can be uploaded straight from the local disk, but larger files need to be uploaded to the EDR File Server. 10GB files can take a lot of time and be tricky when loading into the EDR server though.
3. Can HHS dedupe at the source? The documents are deduped when the files are loaded into our EDR database.
4. What email system does HHS use? Outlook.
5. Does HHS do a search for all custodians at once and dedupe that or is each custodian searched separately? I believe that OCIO (our office that runs the searches) has to search each custodian separately.
6. What size is the mailbox limit? I am not sure exactly what this means.
7. Can HHS provide a search report or a log of the potentially responsive emails using its email system? I do not see a list of the emails until they are loaded into the system.  I just receive the files from OCIO, which come in 10GB tranches.
8. Is HHS capable of seeing on the front-end (email system) if there are large attachments? No, I am unable to see attachments until they are loaded in the system.
9. What is the maximum attachment size allowed? I am not sure that there is a limit for a singular document.

The reason that I believe we are getting so many documents is because the search terms are too general and broad.  It is set up into 3 qualifiers, with the first being companies, the second being anything that brings in the word "COVID" among other terms, and the third having terms like "problem, concern, contract, FDA, difficult, etc."  The terms in the second and third qualifiers are so broad and used so commonly, any document that contains the word covid (which is a lot of documents) is probably going to contain a word from the third set of terms as well.  This means that the only real narrowing terms are the different companies, but companies like Pfizer and Moderna were discussed so much during this time period, that it really struggles to narrow the documents to what Plaintiff is looking for.

**From:** Merrick Wayne <merrick@loevy.com>
**Sent:** Thursday, December 5, 2024 3:15 PM
**To:** Silverman, Bradley (USADC) <BSilverman@usa.doj.gov>
**Cc:** FOIA Team <FOIA@loevy.com>
**Subject:** Re: [EXTERNAL] Re: Reuters Research

Hi Bradley,

Hope you are doing well. We have a JSR due tomorrow. Plaintiff has reviewed HHS's declaration. I want to follow up on these questions to see if you have a response from the agency:

1. What is the exact error message that displays when HHS tries to upload the file to FOIAXpress?
2. When uploading to FOIAXpress, does HHS upload the file from the local disk or from the EDR File Server?
3. Can HHS dedupe at the source?
4. What email system does HHS use?
5. Does HHS do a search for all custodians at once and dedupe that or is each custodian searched separately?
6. What size is the mailbox limit?
7. Can HHS provide a search report or a log of the potentially responsive emails using its email system?
8. Is HHS capable of seeing on the front-end (email system) if there are large attachments?
9. What is the maximum attachment size allowed?

Also, do you have a response to adding a comma between "BARDA" and "related" in the request?

For tomorrow's JSR, Plaintiff would like to request a status conference with the Judge for a day in January. Can you please send me a draft  to review when it is ready?

On Fri, Sep 27, 2024 at 4:03 PM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:

> Hi Merrick, I assume that by "full deduplication," you mean a deduplication across all responsive records. I do not believe that this is technologically possible. As you know, HHS cannot upload the full yield into FOIAExpress, but can only upload relatively small chunks of the entire yield without the system crashing (and even then, needs the contractor's help). Once a set of records are uploaded, we can dedupe across that specific set, but we can't dedupe across records that aren't uploaded. So for example, if we slice the yield into ten chunks that can be uploaded one at a time, we can dedupe within the chunk, but not across chunks that aren't uploaded. I think it's self-explanatory why. So for any chunk that we upload, we can dedupe, but the deduplication won't account for records not uploaded within that chunk.
>
> I disagree about the request reasonably describing the records sought, but we don't need to resolve that now.
>
> I think adding the comma makes sense, though I'll run this by HHS to confirm.
>
> The Judge made clear that he was not very familiar with the significant body of cases in this District concluding that terms like "related to" either make a request, or contribute significantly to a request being, not reasonably described. I genuinely do not think that it is clear what it means to be related to the performance of contractors or subcontractors. We will need to come up with more determinate language. Otherwise, we will litigate this. If Judge Faruqui rules against us, we

may bring it to Judge Chutkan. I think she has ruled for the government on this issue before.

In theory, we probably can process 500 pages of Disbrow's emails, but we first would need to come to an agreement on the scope of responsiveness. If we can't, then we will not process the pages. We are willing to negotiate on responsiveness. If you are not, then we can let Judge Faruqui know that.

Best,
BRadley

---

**From:** Merrick Wayne <merrick@loevy.com>
**Sent:** Friday, September 27, 2024 4:41 PM
**To:** Silverman, Bradley (USADC) <BSilverman@usa.doj.gov>
**Cc:** FOIA Team <FOIA@loevy.com>
**Subject:** [EXTERNAL] Re: Reuters Research

Hi Bradley,

As a recap of the main information that we are looking for as I raised it in Court, we would like HHS to do a full deduplication and provide a breakdown of the number of hits by custodian and search term (including by contractor). This would be helpful information for narrowing as it could help us eliminate custodians or search terms.

I previously asked you about attachments and whether HHS could identify how much of the potentially responsive records are attachments, but you indicated that was not possible. Attachments could be another way to significantly narrow by excluding many in their entirety, so if HHS is able to provide more information about attachments that could be helpful.

Below are some questions we have about HHS's technical capabilities some of which I raised previously but did not get an answer. These mainly are to understand the ability to deduplicate and what high-level information is available to HHS when looking at the search results. For example, the search report or log that I ask about in number 7, should contain a breakdown of hits by custodian, search term, attachments.

1. What is the exact error message that displays when HHS tries to upload the file to FOIAXpress?
2. When uploading to FOIAXpress, does HHS upload the file from the local disk or from the EDR File Server?
3. Can HHS dedupe at the source?
4. What email system does HHS use?
5. Does HHS do a search for all custodians at once and dedupe that or is each custodian searched separately?
6. What size is the mailbox limit?
7. Can HHS provide a search report or a log of the potentially responsive emails using its email system?
8. Is HHS capable of seeing on the front-end (email system) if there are large attachments?

9. What is the maximum attachment size allowed?

Regarding the scope issue, it remains our position that Plaintiff is interested in informal evaluations such as emails discussing contractor performance. This is why we proposed and agreed to an email search.

Regarding the reasonably described issue, I think HHS's complaint about "APSR and BARDA related to all healthcare" being incoherent can be chalked up to a missing comma between "BARDA" and "related." Let me know if this still does not make sense:

> "Analysis, documents or reports related to the performance of contractors or subcontractors awarded contracts by HHS, including APSR and BARDA[,] related to all healthcare, medicines, vaccines, therapies, syringes, respirators and other medical needs for the response to the COVID-19 pandemic from January 1, 2020 to present, including the attached contracts".

Like what the Judge expressed at the status conference, we still think "related to" is clear and unambiguous in this context, especially given that the scope of the search is narrowed to specific custodians' emails. Even if Plaintiff's request was, as originally written, not reasonably described, the parties agreeing to a search of specific custodians using specific keywords should have already cured that issue as it created a defined universe to review.

As another method of helping us with deciding how to narrow, would HHS be able to process 500 pages of Disbrow's emails from the sample under Plaintiff's scope?

Happy to talk further.

On Thu, Sep 19, 2024 at 3:50 PM Merrick Wayne <merrick@loevy.com> wrote:

> Hi Bradley,
>
> I would like to touch base with Plaintiff first, and then I can circle back with the questions and clarifications.  Likely will not be before COB on Friday.
>
> On Wed, Sep 18, 2024 at 6:20 PM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:
>
>> Hi Merrick, following up on the status hearing today, what questions would Reuters like HHS to try to answer? I can't promise we'll agree to or can answer all of them, but let's at least get started on working toward an agreement. Agency counsel will be out next week and the week after that. We probably can't reach an agreement by Friday, but let's see.
>>
>> Best,
>>
>> **Bradley G. Silverman**
>> Assistant U.S. Attorney
>> Civil Division | U.S. Attorney's Office
>> 601 D Street NW, Washington, DC 20530

(202) 252-2575

--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. C

| | |
|---|---|
| **From:** | Silverman, Bradley (USADC) |
| **To:** | "Merrick Wayne"; Stephen D. Tobin |
| **Cc:** | FOIA Team |
| **Subject:** | Reuters questions |
| **Date:** | Friday, January 3, 2025 10:08:46 AM |

Hi Merrick and Stephen, here are the FOIA office's answers to your questions:

1. Can a search be done for all custodians at once or is each custodian searched separately? **Submitted searches are completed as they come in. That is if a search has one or more custodians all are searched at the same time with the same search terms and date range.**

2. What size is the mailbox limit? **HHS email accounts have a 100GB size limit. By default, that includes all emails and attachments for the last two years. When the email account approaches or exceeds the size limit, that can cause the mailbox to receive notification emails to that effect or might cause some issues using the mailbox. Anything older than two years is automatically moved to the Online Archive. The Online Archive size limit 1.5TB**

3. Outlook has the capability of generating a search report or log about the potentially responsive emails which would include, among other things, details about the number of hits and attachments. Can OCIO provide that search report or log? **Every eDiscovery search result includes A "CSV summary page" a comma-separated value (CSV) file that provides a summary of data from a search conducted within the Microsoft Purview eDiscovery platform, typically including details like the total number of items found, locations where the data was discovered, and other relevant statistics, allowing users to easily analyze and export the search results for further processing in spreadsheet applications like Excel.**

4. What is the maximum attachment size allowed? **email attachments are limited to 35MB.**

Best,
Bradley

# Ex. D

| From: | Merrick Wayne |
|---|---|
| To: | Silverman, Bradley (USADC) |
| Cc: | FOIA Team; Stephen Stich Match |
| Subject: | Re: [EXTERNAL] Re: Reuters questions |
| Date: | Friday, January 31, 2025 5:59:44 PM |

Circling back to confirm that we were able to download the spreadsheet, thank you. Have a nice weekend.

On Fri, Jan 31, 2025 at 12:04 PM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:

> I just re-added the FOIA email account—for storage and security reasons, USAfx flushes out accounts after a while. I also sent it a link—let me know if you have trouble accessing.
>
> ---
>
> **From:** Merrick Wayne <merrick@loevy.com>
> **Sent:** Friday, January 31, 2025 12:58 PM
> **To:** Silverman, Bradley (USADC) <BSilverman@usa.doj.gov>
> **Cc:** FOIA Team <FOIA@loevy.com>; Stephen Stich Match <match@loevy.com>
> **Subject:** Re: [EXTERNAL] Re: Reuters questions
>
> Hi Bradley,
>
> Can you please share the USAfx link with foia@loevy.com? That is the email we have registered with Box.
>
> On Fri, Jan 31, 2025 at 10:20 AM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:
>
>> Hi Merrick, I just sent you a USAfx link to an Excel spreadsheet. Is this what you were looking for?
>>
>> ---
>>
>> **From:** Silverman, Bradley (USADC)
>> **Sent:** Thursday, January 16, 2025 7:12 PM
>> **To:** Merrick Wayne <merrick@loevy.com>
>> **Cc:** FOIA Team <FOIA@loevy.com>; Stephen Stich Match <match@loevy.com>
>> **Subject:** RE: [EXTERNAL] Re: Reuters questions

Let me check on that and get back to you.

---

**From:** Merrick Wayne <merrick@loevy.com>
**Sent:** Thursday, January 16, 2025 6:38 PM
**To:** Silverman, Bradley (USADC) <BSilverman@usa.doj.gov>
**Cc:** FOIA Team <FOIA@loevy.com>; Stephen Stich Match <match@loevy.com>
**Subject:** [EXTERNAL] Re: Reuters questions

Hi Bradley,

Thank you for sending these responses. Has OCIO generated a CSV summary page for this request per number 3? If so, are you able to share it?

On Fri, Jan 3, 2025 at 9:08 AM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:

Hi Merrick and Stephen, here are the FOIA office's answers to your questions:

1. Can a search be done for all custodians at once or is each custodian searched separately? **Submitted searches are completed as they come in. That is if a search has one or more custodians all are searched at the same time with the same search terms and date range.**

2. What size is the mailbox limit? **HHS email accounts have a 100GB size limit. By default, that includes all emails and attachments for the last two years. When the email account approaches or exceeds the size limit, that can cause the mailbox to receive notification emails to that effect or might cause some issues using the mailbox. Anything older than two years is automatically moved to the Online Archive. The Online Archive size limit 1.5TB**

3. Outlook has the capability of generating a search report or log about the potentially responsive emails which would include, among other things, details about the number of hits and attachments. Can OCIO provide that search report or log? **Every eDiscovery search result includes A "CSV summary page" a comma-separated value (CSV) file that provides a summary of data from a search conducted within the Microsoft Purview eDiscovery platform, typically including details like the total number of items found, locations where the data was discovered, and other relevant statistics, allowing users to easily analyze and export the search results for further processing in spreadsheet applications like Excel.**

4. What is the maximum attachment size allowed? **email attachments are limited to 35MB.**

Best,

Bradley

--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

--

**Merrick Wayne** (he/him)



Office: (312) 243-5900

311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. E

| | |
|---|---|
| **From:** | Merrick Wayne |
| **To:** | Silverman, Bradley (USADC) |
| **Cc:** | Stephen Stich Match; FOIA Team |
| **Subject:** | [EXTERNAL] Re: Reuters v. HHS 22-0587 JSR Draft |
| **Date:** | Friday, February 28, 2025 3:05:54 PM |
| **Attachments:** | Reuters v. HHS 22-0587 JSR 20250228_MW edits.docx |

Hi Bradley,

Plaintiff would like HHS to provide a CSV summary page for the remaining custodians. Since HHS is unable to deduplicate across custodians, we think we might be able to do that for HHS if we have each of the custodians' CSV summary pages.

Attached is a version of the JSR with my edits in track changes to reflect the above. If this is acceptable to you, then you have my consent to file.

On Fri, Feb 28, 2025 at 10:46 AM Merrick Wayne <merrick@loevy.com> wrote:

Hi Bradley,

Thank you for preparing the JSR. I will circle back with any edits. I am waiting on a update from Plaintiff.

On Fri, Feb 28, 2025 at 9:54 AM Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov> wrote:

Hi Merrick and Stephen, how does this look for today's filing?

Best,

Bradley

--

**Merrick Wayne** (he/him)



Office: (312) 243-5900

311 N Aberdeen St, Chicago, IL 60607

www.loevy.com

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

--

**Merrick Wayne** (he/him)



Office: (312) 243-5900

311 N Aberdeen St, Chicago, IL 60607

www.loevy.com

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. F

| | |
|---|---|
| **From:** | Merrick Wayne |
| **To:** | Silverman, Bradley (USADC) |
| **Cc:** | FOIA Team |
| **Subject:** | [EXTERNAL] Fwd: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS) |
| **Date:** | Monday, June 30, 2025 2:45:28 PM |
| **Attachments:** | Summary.csv |

Hi Bradley,

Can you please clarify what this document is supposed to show? We were expecting spreadsheet(s) like what we received in January for a portion of Disbrow's emails.

---------- Forwarded message ---------
From: **'Stroud, Eric (OS/OMHA)' via FOIA Team** <FOIA@loevy.com>
Date: Wed, Jun 25, 2025 at 3:36 PM
Subject: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS)
To: foia@loevy.com <foia@loevy.com>, marisa.taylor@thomsonreuters.com
<marisa.taylor@thomsonreuters.com>
Cc: Johnson, Marie-Flore (HHS/OGC) <Marie-flore.Johnson@hhs.gov>, Lancey, Brandon
(OS/ASPA) <Brandon.Lancey@hhs.gov>


Good afternoon,
This is concerning the above-captioned litigation and component FOIA request. The attached file is a summary of the results returned from the search. As indicated, the requested search returned more than 2 trillion files (2,147, 483, 647), with a size of approximately 155 MB. Please let us know if you have any technical issues. Thank you.




Eric Stroud
Attorney Advisor

Detailed to:
Freedom of Information/Privacy Acts Division
Office of the Assistant Secretary for Public Affairs (ASPA)
Office of the Secretary (OS)
Department of Health and Human Services (HHS)

Telephone: (571) 457-7297
Email: eric.stroud@hhs.gov



--

**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. G

| | |
|---|---|
| **From:** | Silverman, Bradley (USADC) |
| **To:** | "Merrick Wayne" |
| **Cc:** | "FOIA Team" |
| **Subject:** | RE: [EXTERNAL] Fwd: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS) |
| **Date:** | Thursday, July 10, 2025 11:53:00 AM |

HHS asked me to pass along the following message: "Plaintiff will need to provide clarification.  OS-FOIA will not be able to do things at the last minute."

---

**From:** Silverman, Bradley (USADC)
**Sent:** Tuesday, July 1, 2025 12:56 PM
**To:** Merrick Wayne <merrick@loevy.com>
**Cc:** FOIA Team <FOIA@loevy.com>
**Subject:** RE: [EXTERNAL] Fwd: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS)

Here is what HHS told me: "the spreadsheet that Plaintiff recently received is supposed to show that even if HHS were to provide a more detailed spreadsheet, it is unrealistic to expect HHS to review search results that yielded a trillion files. HHS states that it is clear from the results that the parameters are too broad.  As a result, Plaintiff will need to provide further clarification."

---

**From:** Merrick Wayne <merrick@loevy.com>
**Sent:** Monday, June 30, 2025 2:44 PM
**To:** Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov>
**Cc:** FOIA Team <FOIA@loevy.com>
**Subject:** [EXTERNAL] Fwd: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS)

Hi Bradley,

Can you please clarify what this document is supposed to show? We were expecting spreadsheet(s) like what we received in January for a portion of Disbrow's emails.

---------- Forwarded message ---------
From: **'Stroud, Eric (OS/OMHA)' via FOIA Team** <FOIA@loevy.com>
Date: Wed, Jun 25, 2025 at 3:36 PM
Subject: Reuters News Media v. HHS 22-cv-00587 (21-015288-FOIA-OS)
To: foia@loevy.com <foia@loevy.com>, marisa.taylor@thomsonreuters.com <marisa.taylor@thomsonreuters.com>
Cc: Johnson, Marie-Flore (HHS/OGC) <Marie-flore.Johnson@hhs.gov>, Lancey, Brandon (OS/ASPA) <Brandon.Lancey@hhs.gov>

Good afternoon,

This is concerning the above-captioned litigation and component FOIA request. The attached file is a summary of the results returned from the search. As indicated, the requested search returned more than 2 trillion files (2,147, 483, 647), with a size of approximately 155 MB. Please let us know if you have any technical issues. Thank you.

Eric Stroud
Attorney Advisor

Detailed to:
Freedom of Information/Privacy Acts Division
Office of the Assistant Secretary for Public Affairs (ASPA)
Office of the Secretary (OS)
Department of Health and Human Services (HHS)

Telephone: (571) 457-7297
Email: eric.stroud@hhs.gov

--
**Merrick Wayne** (he/him)

Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. H

**From:**   Merrick Wayne
**To:**     Silverman, Bradley (USADC)
**Cc:**     FOIA Team
**Subject:** [EXTERNAL] Reuters v. HHS (22-cv-587)
**Date:**   Friday, July 25, 2025 11:44:28 AM

Hi Bradley,

Reuters wants to ask the Court for a cross-motions for summary judgment briefing schedule in the JSR on Monday. We do not think there is any benefit in further conferring between the parties, especially after being told for months that HHS would be providing a summary report for the whole search like what was provided in January. We even tried to work with an internal e-discovery expert to make sense of the spreadsheet you provided recently, but it in no way would that help Reuters make informed narrowing decisions. We do not believe the billions of hits number that HHS claims. Therefore, HHS needs to procure modern technology that can process these results. RelativityOne is used by so many agencies across the federal government (such as DHS and Commerce), and it has the tools that a reasonable agency in 2025 would use to process FOIA requests.

Additionally, given that we are over 3 years into this case and not a single page has been produced, Reuters will be moving for a motion for production order for the records identified in the January spreadsheet at a rate of 1,500 pages per month. HHS has those records in its system and should be able to process them. Please note that we are not narrowing the request to those emails. We maintain our position that the search the parties agreed upon is proper and reasonably describes the request and that HHS must process all of the records responsive to that search.
Please let me know if HHS will agree to begin processing the emails identified in the January spreadsheet and if so, then we can hold off on the motion.

Reuters would like to include the following language in Monday's JSR. If HHS does not agree to setting a briefing schedule in the JSR, then please insert the following as "Plaintiff's Position Statement" in the draft that you send for my review.

"As previously reported, Reuters requested a CSV summary page of a sample of one custodian's emails, which HHS provided on January 31, 2025. ECF. No. 49. Reuters then requested that HHS provide similar summary reports for the remainder of the sample custodian's emails and the remaining custodians. HHS reported that it would provide the full summary by May 19, 2025.  ECF No. 50. That did not occur. HHS then reported that it would provide the summary by June 15, 2025.  ECF No. 51. That did not occur. On June 25, 2025, HHS sent Reuters a spreadsheet unlike what it provided in January, and HHS claimed this new spreadsheet proved there are billions of hits. Based on the information in the spreadsheets provided by HHS, Reuters cannot assess the validity of HHS's claim of billions of hits. Given the parameters of the search, the time period and the number of custodians, Reuters does not believe that it would be possible for the search to generate billions of hits. HHS maintains its position that the request does not reasonably describe the records. Reuters disagrees. Reuters has exhausted its efforts at conferring with HHS and requests that the Court enter a briefing schedule on cross-motions for summary judgment with HHS to file its motion for summary judgment on the "reasonably described" issue by August 19, 2025, Reuters to file its combined cross-motion and response by September 2, 2025, HHS to file its combined response and reply by September 9, 2025, and Reuters to file its reply by September 16, 2025. In the meantime, Reuters plans to concurrently file a motion for production order asking the Court to order HHS

to process the emails identified in the January 31, 2025 spreadsheet at a rate of 1,500 pages per month because HHS has produced no records to date in this 3+ year old case."

--
**Merrick Wayne** (he/him)



Office: (312) 243-5900
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Ex. I

**From:**      Silverman, Bradley (USADC)
**To:**        Merrick Wayne
**Cc:**        FOIA Team
**Subject:**   Reuters CSV Issue
**Date:**      Sunday, August 31, 2025 7:08:04 PM

Hi Merrick, I've been speaking with HHS about the CSV issue—why the second spreadsheet looks different than what you were expecting. What their eDiscovery person explained is that the Microsoft platform currently used for enterprise searches no longer offers the level of granularity that Reuters is requesting. Accordingly, HHS provided Reuters with the only type of report the system is capable of generating.


Best,
Bradley